In the Matter of ALBERT P. ARTHURS, Respondent, *v.* PAUL REGAN, as Chairman of the New York State Board of Parole, Appellant.

Second Department, April 2, 1973.

*Louis J. Lefkowitz, Attorney-General (Burton Herman and Samuel A. Hirshowitz of counsel), for appellant.*

*Alvin Geller (Lawrence Stern of counsel), for respondent.*

BENJAMIN, J. After serving part of a prison term under a judgment of conviction for a felony, the petitioner was released on parole on February 16, 1970. His parole has been revoked for an alleged violation of a parole condition relating to the consumption of alcoholic beverages. The Parole Board failed

to make findings of fact and conclusions of law. At the Special Term the petitioner advanced several due process claims with respect to the procedures employed by the Parole Board. The Special Term found merit in some of his claims and ordered his release (*Arthurs* v. *Regan*, 69 Misc 2d 363). In our opinion it was correct to order the petitioner's release.

In *Morrissey* v. *Brewer* (408 U. S. 471), the Supreme Court of the United States analyzed parole revocation as a two-stage process. The first stage concerns the arrest of the parolee and the preliminary hearing required in connection with the arrest. The second stage concerns the revocation hearing itself. As was there said (pp. 487–489):

"(b) *The Revocation Hearing.* There must also be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority. This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation. The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. A lapse of two months, as the State suggests occurs in some cases, would not appear to be unreasonable.

"We cannot write a code of procedure; that is the responsibility of each State. Most States have done so by legislation, others by judicial decision usually on due process grounds. Our task is limited to deciding the minimum requirements of due process. They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."

The revocation of the petitioner's parole was accomplished by the Parole Board in a manner which did not comply with *Morrissey* (*supra*), which decision we deem applicable. The Parole Board did not supply " a written statement * * * as to the evidence relied on and reasons for revoking parole " and, accordingly, it was proper for the Special Term to order the petitioner's release. However, since there indeed may have been a violation of parole, our affirmance of the judgment of the Special Term shall be without prejudice to a new parole revocation proceeding, if brought. Should such a new proceeding be brought, the processing thereof must, of course, comply with *Morrissey* v. *Brewer* (*supra*).

HOPKINS, Acting P. J., LATHAM, GULOTTA and BRENNAN, JJ., concur.

Judgment of the Supreme Court, Dutchess County, entered March 22, 1972, affirmed, without costs and without prejudice to the institution of a further parole revocation proceeding.